UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,    CRIMINAL NO. 10-269 (DSD/JSM)

    Plaintiff,

v.    REPORT AND RECOMMENDATION

MANDEL McDONALD BENSON,

    Defendant.

JANIE S. MAYERON, United States Magistrate Judge

The above matter came on before the undersigned upon defendant Mandel McDonald Benson's Motion to Suppress Fruits of Unlawful Arrest and Seizure [Docket No. 16]. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1.

Assistant United States Attorney Jeffrey Bryan appeared on behalf of the Government. Federal Defender Reynaldo Aligada, Jr. appeared on behalf of defendant Mandel McDonald Benson, who was personally present.

Based upon the pleadings, testimony taken at the hearing and exhibits submitted at the hearing, IT IS RECOMMENDED that:

Mandel McDonald Benson's Motion to Suppress Fruits of Unlawful Arrest and Seizure [Docket No. 16] be **DENIED.**

I.    **FACTUAL BACKGROUND**

Defendant was indicted on October 5, 2010 on one count of felon in possession of a firearm. See Indictment, Count I [Docket No. 6]. He now seeks

the suppression of physical evidence obtained as a result of his seizure and arrest on December 15, 2009 in Bloomington, Minnesota. Defendant's Pretrial Motion to Suppress Fruits of Unlawful Arrest and Seizure [Docket No. 16]. Defendant contends that his seizure and arrest was made without reasonable suspicion or probable cause pursuant to the Fourth Amendment of the United States. Id. ¶ 1.

Officer Michael Utecht of the Bloomington Police Department testified at the suppression hearing that on December 15, 2009, he was on patrol in the area of American Boulevard and Portland Avenue in Bloomington, Minnesota in a marked squad car. He received a call from the dispatcher about a shoplifting incident at the Walmart near highway 494 South, between Portland and Chicago Avenues. The shoplifting suspect was described as a black male, wearing a black hat and black long-sleeved shirt, who was observed fleeing westbound on the frontage road. Officer Utecht was later told that the suspect had ditched stolen merchandise and a jacket. When Officer Utecht responded to the call, he was approximately one-and-one-half-blocks away. He went to a BP gas station near the Walmart. While at the gas station, he observed a person matching the suspect's description jogging in front of the gas station. Officer Utecht got out of his squad, made eye contact with the suspect, later identified as defendant, and yelled for him to stop. Defendant did not stop, but kept running and increased his pace. Officer Utecht got into his squad and attempted to drive parallel to defendant, but Utecht lost sight of him when defendant ran into a parking lot at a

strip mall behind the gas station and went between two parked cars. Utecht got out of his squad car and pursued defendant on foot.

Counsel for the Government showed Officer Utecht two photographs. See Gov't Exhibits 1 and 2. The exhibits were aerial photographs showing the BP gas station, the Walmart and the adjacent strip mall, which are all in close proximity. Officer Utecht indicated on Exhibit 2 where he first saw defendant, the location of his squad car at the BP gas station, the route defendant took when running from the area of the gas station to the strip mall and where defendant traveled between the two parked cars, and the location where defendant was ultimately stopped.

After initially losing sight of defendant, Officer Utecht saw him emerge from between the two parked cars within a few seconds. He told defendant to stop and put his hands on his head, and defendant complied. Defendant had a $50 bill in his hand. Utecht conducted a pat search for safety, handcuffed defendant, and placed him in his squad car. Utecht then searched the area where he had lost sight of defendant and found a triangular nylon case containing a handgun under a parked vehicle. Officer Utecht took defendant to Walmart for a show-up identification by Walmart employees. The employees identified defendant as the shoplifting suspect.[1] Officer Utecht testified that had the Walmart employees not been able to identify defendant as the shoplifting suspect, he would have released him. A warrant was later issued for a DNA sample, which defendant provided.

---

[1] Presumably, defendant was arrested after the identification by Walmart employees.

## II. DISCUSSION

Defendant's counsel conceded that defendant had no legitimate expectation of privacy in the handgun abandoned and recovered at the scene under a parked car because the gun was not in defendant's possession. See United States v. Tugwell, 125 F.3d 600, 602 (8th Cir. 1997) ("A warrantless search of abandoned property does not implicate the Fourth Amendment, for any expectation of privacy in the item searched is forfeited upon its abandonment."). Instead, counsel argued that although Officer Utecht had reasonable suspicion to stop defendant in the parking lot, once defendant obeyed Officer Utecht's second order to stop and placed his hands on his head, at that point reasonable suspicion had dissipated and there was no basis to detain defendant and no probable cause to arrest defendant. Additionally, defendant argued that fruits from defendant's detention and subsequent arrest, such as the DNA evidence, should be suppressed.[2]

The Government contended that the Court should analyze the arrest under the reasonable suspicion standard as described in United States v. Martinez, 462 F.3d 903 (8th Cir. 2006) and on that basis, should conclude that Officer Utecht had reasonable suspicion to detain defendant and transport him to Walmart for identification. Alternatively, the Government argued that even if the Court applied the probable cause standard, Utecht had probable cause to stop and then arrest defendant.

---

[2] Defendant has not moved to suppress the DNA evidence, which was obtained by a search warrant, or any statements he made.

4

A law enforcement officer may detain a person for investigation without probable cause to arrest if the officer "has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)). The totality of circumstances may give rise to reasonable suspicion of criminal activity. See United States v. Coleman, 603 F.3d 496, 498 (8th Cir. 2010). The police officers' experience and their ability to recognize acts consistent with illegal activity may be considered in analyzing reasonable suspicion. Id.; see also U.S. v. Maltais, 403 F. 3d 550, 554 (8th Cir. 2005) (citations omitted). On the other hand, "an officer has probable cause to make a warrantless arrest when the facts and circumstances are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." Fisher v. Wal-Mart Stores, Inc., 619 F.3d 811 (8th Cir. 2010) (quoting United States v. Torres-Lona, 491 F.3d 750, 755 (8th Cir. 2007)).

In Martinez, the case cited by the Government at the motions hearing, police officers stopped a suspect, Martinez, who was a close match to an eyewitness' description of a bank robber. Martinez was found near the scene of the crime, acting suspiciously, and with a large amount of cash in his pocket. Martinez, 462 F.3d at 907. When the officers first saw Martinez, they stopped and told him they needed to talk to him. Id. at 906. Martinez cooperated – he stopped, was handcuffed and placed in the police car, and then was transported to the bank for a show-up identification. Id. The teller positively identified Martinez as the robber, at which point he was arrested and taken to jail. Id.

5

Martinez moved to suppress his statements, the cash seized and the show-up identification as "fruits of the poisonous tree" because once he was placed in the squad car to return to the bank for identification, the stop turned into an arrest, for which the officers had no probable cause. Id. at 907.

The court found that the short amount of time Martinez was restrained (i.e. placed in the squad car, transported a short distance to the bank and displayed to the teller) did not convert the stop to an arrest. Id. (citing United States v. Lego, 855 F.2d 542 (8th Cir. 1988) (confining a potentially dangerous suspect to a squad car is not an arrest); United States v. Montano-Gudino, 309 F.3d 501, 504 (8th Cir. 2002) (moving a suspect from one location to another did not exceed the bounds of a Terry stop)). The court further found that neither the use of handcuffs nor the transportation of Martinez back to the bank for the show-up identification converted the Terry stop into an arrest for which probable cause was required. Id. at 907-08. Finally, because Martinez had a large amount of cash in his pocket, with no plausible explanation for it, the court concluded that even if the stop could be considered an "arrest," the discovery of the cash provided probable cause to arrest him. Id. at 908.

Applying the reasoning of the Eighth Circuit, this Court concludes that Officer Utecht had reasonable suspicion of criminal activity to detain defendant for the purpose of taking him back to Walmart for the show-up identification to determine if a "full custodial arrest and detention was warranted." Martinez, 462 F.3d at 908 (quoting Lego, 855 F.2d at 545). Officer Utecht saw a person who matched the description of the shoplifting suspect and the person refused to stop

when first ordered to do so. In fact, he picked up his pace and continued to run from Officer Utecht until he eventually stopped. Defendant's flight from Officer Utecht, coupled with his proximity to the crime scene at Walmart, his match to the physical description of the suspect and the small amount of time that elapsed between the time Officer Utecht received the dispatch and his observation of defendant, leads this Court to find that Officer Utecht could reasonably conclude that "criminal activity was afoot" and that defendant could be detained for further investigation. See Hixon v. City of Golden Valley, 2007 WL 1655831 (D.Minn. June 7, 2007) at *7 (proximity of suspect to vehicle identified by dispatcher as involved in a crime and the short time between crime and officer's observation of defendant and vehicle, gave rise to reasonable suspicion that defendant was involved in the crime). A criminal suspect's cooperation with a police officer's commands, whether effected immediately or eventually, has no bearing on whether reasonable suspicion exists. See Martinez, 462 F.3d at 906.

    Additionally, this Court finds that based on the description provided by police dispatch of the suspected shoplifter, and the facts and circumstances of Officer Utecht's initial contact with defendant, defendant's subsequent flight,[3] the

---

[3] A suspect's flight from police officers, after officers already have a suspicion of criminal activity, can ripen reasonable suspicion into probable cause. See Hixon, 2007 WL 1655831 at *7 (citing Kolender v. Lawson, 461 U.S. 352, 366 n. 4 (1983) (Brennan, J. concurring) (where officers have some indicia of criminal activity "reactions such as flight, may…provide the necessary information, in addition to that the officers already possess, to constitute probable cause..")); see also Sibron v. New York, 392 U.S. 40, 66-67 (1968) ("[D]eliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest.");

discovery of a gun under one of the parked cars past which defendant had run, and the later identification by Walmart employees as the shoplifter, probable cause existed for his arrest.

It was defendant's burden to come forth with some evidence and argument to support his position that his seizure and arrest was conducted without probable cause. See United States v. Starks, 193 F.R.D. 624, 629 (D. Minn. 2000) (quoting United States v. de la Fuente, 548 F.2d 528, 533 (5th Cir. 1977) ("It is well established that the burdens of production and persuasion generally rest on the movant in a suppression hearing.")). As the Court in Starks observed, "even in those circumstances where the Government has the ultimate burden of persuasion, Defendant has the initial burden of making a prima facie showing of illegality." 193 F.R.D. at 629.

Here, defendant has offered neither facts nor any compelling legal argument to support his claim. He has not cited any cases to the Court in support of his theory that reasonable suspicion dissipates upon cooperation with a police officer. He has failed to meet his burden to support his position and his motion to suppress should be denied.

---

United States v. Slipka, 735 F.2d 1064, 1066 (8th Cir. 1984) (finding that defendant's "appearance less than two hours before the robbery matched the description of the robber in almost every respect[,]… coupled with [defendant's] flight, would warrant a prudent man in believing that [defendant] had committed ... an offense.) (internal quotation marks and citations omitted).

## III. RECOMMENDATION

For the reasons set forth above and based on all the files, records, and proceedings herein,

**IT IS RECOMMENDED THAT:**

Mandel McDonald Benson's Motion to Suppress Fruits of Unlawful Arrest and Seizure [Docket No. 16] be denied.

Dated: Nov. 9, 2010
                                       *s/Janie S. Mayeron*
                                       JANIE S. MAYERON
                                       United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by November 23, 2010 a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this Rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.