```
         UNITED STATES DISTRICT COURT
            DISTRICT OF MINNESOTA
         Criminal No. 10-269(DSD/JSM)
```

United States of America,

       Plaintiff,

v.                                                          **ORDER**

Mandel McDonald Benson,

       Defendant.

    This matter is before the court upon the pro se motions for a new trial and to dismiss for ineffective assistance of counsel by defendant Mandel McDonald Benson. Based on a review of the file, record and proceedings herein, the court denies the motions.

**BACKGROUND**

    On December 15, 2009, a Bloomington, Minnesota police officer arrested Benson after a reported shoplifting at a Walmart store. According to trial testimony, the police officer chased Benson through a parking lot and lost sight of him between two parked cars. Benson emerged from between the two cars and surrendered. The police officer then looked under the cars and found a nylon bag containing a gun. Thereafter, tests of the gun yielded a mixed DNA profile, with the dominant profile consistent with the DNA of Benson. Benson was arrested and appeared for preliminary and detention hearings, where he was represented by Assistant Federal Defender Reggie Aligada. Tr. 3, ECF No. 44. A grand jury indicted

Benson for felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). Trial was initially scheduled to begin December 13, 2010.

Aligada filed several pre-trial motions, including motions to compel disclosure of favorable evidence, to suppress eyewitness identifications, to retain rough notes, for disclosure of Jencks Act material, for disclosure of Rule 404 evidence, and for discovery and inspection. See ECF Nos. 10–15. Aligada also moved to suppress evidence, including DNA samples, on the grounds that the evidence was seized following an arrest unsupported by probable cause. See ECF No. 16.

On November 2, 2010, the magistrate judge arraigned Benson and heard argument on the various pre-trial motions. Benson was present. See Tr. 3, ECF No. 23. The majority of the one-hour hearing was devoted to the suppression motion. Id. The arresting officer testified and was cross-examined by Aligada. Benson interjected several times, and Aligada conveyed Benson's concerns to the court. See id. at 43, 46. The magistrate judge issued a report and recommendation in which she recommended denial of the suppression motion.

Aligada timely filed objections, and moved to continue the trial, because the government's response to the objections was not due until just over a week before trial was to begin and because Aligada was scheduled to begin trial in another criminal matter on

December 13. The court granted the motion and continued the trial until January 18, 2011. Thereafter, the court overruled the objections to the report and recommendation and denied the motion to suppress. Before trial, Aligada secured witness subpoenas, and moved in limine to exclude evidence of prior arrests for being a felon in possession of a firearm. The court granted the motion.

Trial began on January 18, 2011. The government proceeded through its case and chief, and had called all but its final witness before the lunch break on the second day of trial. After the lunch break, Benson requested to speak to the court outside of the presence of the jury. Benson notified the court that he did not want Aligada to represent him any further. See Tr. 204, ECF No. 56, at 122. Following colloquy, the court indicated that it would allow Benson to proceed pro se. With the permission of the court, the government questioned Benson under Faretta v. California, 422 U.S. 806 (1975). Id. at 209-19.

Benson retreated from his request to proceed pro se, but insisted that Aligada no longer represent him. Id. at 219-20, 224, 229. The court and Aligada both expressed concern that Benson's agitation, if viewed by the jury, could prejudice him. Id. at 237, 240, 243. Aligada requested a recess to talk to Benson. After the recess, Aligada informed the court that communication had broken down. The court then relieved Aligada of his representation, ordered appointment of new counsel and continued the trial for

3

three weeks. Leon Trawick was appointed new counsel under the Criminal Justice Act on January 21, 2011.

On February 7, 2011, the court held a status conference and heard various motions in limine, including a motion for a mistrial by Benson. The court denied the motion. Tr. 35-36, ECF No. 73, at 35-36. Benson informed the court that he did not want Trawick to represent him. The court instructed Benson to reconsider and stated that it would take up the matter when trial resumed. The next day, Benson again requested to proceed pro se, and after another Faretta colloquy, the court allowed him to proceed pro se, with Trawick appointed as his standby counsel. Tr. 265-77, ECF No. 74, at 7-19. The court allowed Trawick to sit at counsel table with Benson.

Trial resumed. The government called its final witness, special agent Liane Sellner. Benson, assisted by Trawick, cross-examined Sellner, and the government rested. The court allowed Benson to make a second opening statement. He then recalled witnesses Krista Zaruba, Michael Utecht and Timothy Brosam, and called M. Solomon Bey (his mother) and Pia Thao. Trawick assisted.

The jury found Benson guilty of the crime of felon in possession of a firearm. Thereafter, Benson filed pro se motions for a new trial and a motion to dismiss for ineffective assistance of counsel. The court now considers the motions.

4

**DISCUSSION**

Upon the motion of a defendant, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Cr. P. 33(a). The court has broad discretion to grant a new trial, but should do so "only sparingly and with caution." United States v. Dodd, 391 F.3d 930, 934 (8th Cir. 2004).

**I.   Ineffective Assistance of Counsel**

To prevail on a motion for a new trial based on ineffective assistance of counsel, defendant must meet both prongs of the test set forth in Strickland v. Washington, 466 U.S. 668, 694, (1984). See United States v. Williams, 562 F.3d 938, 941 (8th Cir. 2009). First, a defendant must show that his counsel's performance was so deficient that it was objectively unreasonable. See Strickland, 466 U.S. at 687. Because [t]here are countless ways to provide effective assistance in any given case" and different attorneys "would not defend a particular client in the same way," the court reviews the performance of counsel with significant deference. Id. at 689. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. "Reasonable performance of counsel includes an adequate investigation of facts, consideration of viable theories, and development of evidence to support those theories." Cagle v. Norris, 474 F.3d 1090, 1097 (8th Cir. 2007).

Second, if a defendant shows that his counsel rendered objectively unreasonable assistance, he must also demonstrate prejudice by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland, 466 U.S. at 694.

### A. Continuance

Benson first argues that Aligada provided ineffective assistance by moving to continue the original trial date of December 13, 2010, against Benson's wishes. Aligada moved for a continuance on November 29, 2010, because of schedule conflicts and the then-pending motion to suppress. Under these circumstances, Aligada properly moved to continue the trial, and his decision was not objectively unreasonable. Indeed, failing to move for a continuance might have raised more significant issues. Moreover, even if the motion was objectively unreasonable, no prejudice attached, as the DNA tests of the gun had been completed, and ample time remained under the Speedy Trial Act. Therefore, Benson's argument fails.

### B. Presence During Motions in Limine

Benson next argues that Aligada provided ineffective assistance because Benson was not present while the court rendered decisions on motions in limine. A defendant need not be present,

however, when, as here, "the proceeding involve[d] only a conference or hearing on a question of law." Fed. R. Cr. P. 43(b)(3). Therefore, Benson's argument fails.

### C. Specific Questions and Witnesses

Benson also argues that Aligada provided ineffective assistance by not asking particular questions of witnesses at trial. An attorney need not raise every conceivable argument, and must assess whether requested questions and arguments will advance the interests of the defendant. See Carter v. Hopkins, 92 F.3d 666, 670 (8th Cir. 1996) (citation omitted). The court observed Aligada's cross-examination of witnesses, and finds it consistent with the transference theory of defense described in Aligada's opening statement. Decisions about how to structure a defense in the best interest of the client are within the discretion of counsel. Here, no evidence suggests that Aligada's alleged failure to ask certain questions was objectively unreasonable. Even if it were, Benson does not show that any prejudice resulted, and fails to specify the questions and arguments that he wanted Aligada to advance.

Benson next argues that Aligada provided ineffective assistance by failing to call certain witnesses requested by Benson. As an initial matter, the court notes that it granted Benson's request to remove Aligada from the case before the government rested. As a result, the trial had not reached a point

where Aligada had an opportunity to call any witness. Even if it had, Benson does not identify the witnesses or indicate the content of their testimony.

As to DNA witnesses, the government offered the testimony of the laboratory technicians who procured the samples and tested the gun and bag. Aligada cross-examined the witnesses, raising questions about DNA transference. Zaruba testified that the DNA of several persons was present on the gun, and that the dominant DNA profile matched that of Benson to a high degree of probability. See Tr. 161-62, ECF No. 56, at 79-80. Allison Dolenc testified that the DNA of several persons was present on the bag, and no profile dominated over another. Benson's DNA matched the mixture found on the bag, but because it did not predominate, she could not conclude that he had handled the bag, but only that he could not be excluded. See id. at 191. Benson does not indicate how additional testing or opinion would differ or lead to a different result.

Further, there is simply no reasonable probability that the outcome of the trial would have been different had a DNA expert been involved. In addition to the DNA evidence, the jury received evidence that the police officer found the gun where he lost sight of Benson. The government also presented evidence that Benson knows and spends time with the owner of the gun at issue in this case. See Tr. 329-30. Therefore, this argument fails.

### D. Suppression of Evidence

Lastly, Benson argues that Aligada was ineffective because he failed to suppress evidence. Aligada moved to suppress the evidence, and timely objected to the magistrate judge's recommendation to deny the motion. The decision of the court to deny the motion is not a basis for a claim of ineffective assistance. Cf. James v. Iowa, 100 F.3d. 586, 590 (8th Cir. 1996) (unsuccessful trial strategy does not constitute ineffective assistance). Therefore, a new trial is not warranted based on ineffective assistance of counsel.

## II. Admissibility of Evidence

Benson next argues that certain evidence was not properly collected. Specifically, Benson argues that the police officer handled the gun bag without gloves and that the laboratory analyst erred by working on two different cases at once. As Benson states, however, each witness testified to these facts. The court instructed the jury that it was their role to determine what weight, if any, to give to the evidence and what credibility, if any, to give to each witness.[1] Therefore, a new trail is not warranted based on admissibility of evidence.

---

[1] Defendant's argument that the testimony of Zaruba that she made a scrivener's error and noted the error by crossing out and initialing the text somehow violates Rule 702 of the Federal Rules of Evidence or Daubert is without merit. As noted, the jury heard her admit the error.

### III. Access to Case File

Benson next argues that he was denied due process in the form of access to exculpatory evidence. Nothing in the record supports this argument. He also argues that he was not given access to his case file once he refused to allow Trawick to represent him. However, the court appointed Trawick to assist as standby counsel and even allowed Trawick to sit next to Benson and advise him during the trial. Benson had immediate access to Trawick's file.[2] Moreover, the court had specifically warned Benson that he would not receive a second continuance or a third attorney if he refused to work with his second attorney. See Tr. 249, ECF. No. 56, at 167. In short, the argument is without merit, and therefore a new trial is not warranted.

### IV. Composition of Jury

Benson claims that the jury "distinctively excluded African-American men and women, or was systematically underrepresented as a means to ensure unfairness and biasness."[3] The Sixth Amendment entitles a defendant to an "impartial jury drawn from a fair cross section of the community." United States v. Thompson, 450 F.3d 840, 843 (8th Cir. 2006) (quoting Taylor v. Louisiana, 419 U.S.

---

[2] The court also notes that it observed Benson bring and consult a large file of his own on each day of the trial.

[3] The court does not understand Benson to be making a Batson challenge, as the only African-American member of the venire requested exclusion for medical reasons; no peremptory challenge occurred.

522, 536 (1975)).  To show violation of this right, a defendant must demonstrate that the alleged underrepresentation is the result of systematic exclusion.  Benson offers no argument and no evidence that African-American citizens are systematically excluded from the District's jury pool of registered voters and holders of Minnesota driver's licenses or identification cards.  His bare assertion is insufficient to show a violation, and therefore a new trial is not warranted.

**V.   Prosecutorial Misconduct**

Lastly, Benson argues that the case agent from the Bureau of Alcohol Tobacco and Firearms waited outside the residence of M. Soloman Bey, a possible witness for Benson, and asked whether she knew the whereabouts of the owner of the gun.  Government conduct designed to intimidate a potential witness is improper.  United States v. Habhab, 132 F.3d 410, 415 (8th Cir. 1996).  In this case, there is no evidence from which the court could infer that the agent's alleged inquiry was designed to intimidate.  Moreover, there is no suggestion that the alleged contact resulted in any prejudice to Benson: Bey testified for Benson at trial.  Therefore, this argument fails.

### CONCLUSION

The court observed Benson's first and second counsel provide skilled assistance.  Benson's refusals to accept their assistance

and his decision to proceed pro se do not invalidate the evidence or the finding of the jury.  The present motions do not state a basis upon which to vacate the judgment and order a new trial. Accordingly, **IT IS HEREBY ORDERED** that the motions for new trial [ECF Nos. 67, 70] and motion to dismiss for ineffective assistance of counsel [ECF No. 69] are denied.

Dated:  April 11, 2011

                                        s/David S. Doty
                                        David S. Doty, Judge
                                        United States District Court